IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03315-SBP

C.T.J.C.,[1]

       Plaintiff,

v.

MARTIN J. O'MALLEY,[2] Commissioner of Social Security,

       Defendant.

---

**OPINION AND ORDER**

---

**Susan Prose, United States Magistrate Judge**

       Plaintiff C.T.J.C. brings this action under Title II, 42 U.S.C. §§ 401 *et seq.*, and Title XVI, 42 U.S.C. §§ 1381, *et seq.*, of the Social Security Act ("the Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The court has carefully considered the parties' briefs, the social security administrative record, and the applicable law. No hearing is necessary.

       For the reasons below, the court **AFFIRMS** the Commissioner's decision.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

1

## BACKGROUND

On April 1, 2020, Plaintiff filed applications for DIB and SSI benefits. AR: 21.[3] She alleged disability beginning on July 1, 2019, due to multiple sclerosis, diabetes, liver disease, back injury, chronic pain, hypothyroidism, depression, hip injury, migraines, and chronic fatigue. AR: 88, 304. Her claim was denied initially on August 18, 2020, and upon reconsideration on April 22, 2021. AR: 21. Plaintiff attended a hearing on January 25, 2022. AR: 41-84. After the hearing, the Administrative Law Judge, Shane McGovern ("ALJ"), issued an unfavorable decision dated March 8, 2022. AR: 18-40. The Appeals Council denied review on October 26, 2022, making the ALJ's decision the final agency decision. AR: 4-8.

Plaintiff then sought review in this court. ECF No. 1. Plaintiff filed her opening Brief, ECF No. 12 ("Brief"), Defendant responded, ECF No. 16 ("Response"), and Plaintiff replied, ECF No. 17 ("Reply").

## DIB/SSI FRAMEWORK[4]

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the

---

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record. The administrative record is found at ECF No. 10.

[4] The court here cites relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations are found in Part 416 of Title 20, relating to supplemental security income benefits. For readability, the analysis in this Opinion encompasses the identical regulations covering SSI benefits, even if not specifically referenced.

2

mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(i)-(v) (DIB evaluation of disability of adults). If it can be determined that the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. 20 C.F.R. § 404.1520(a)(4). However, if that determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . . age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under 20 C.F.R. § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(d). If not, the Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." 20 C.F.R. § 404.1520(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)). If the claimant's "severe impairment" prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. 20 C.F.R. § 404.1520(g).

Lastly, step five considers the RFC assessment and the claimant's vocational factors—"age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy

(either in the region where [they] live or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If the claimant "can make an adjustment to other work," they are "not disabled." 20 C.F.R. § 404.1520(g).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden at step five to prove there is other work the plaintiff can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove her RFC. 20 C.F.R. § 404.1560(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

## ALJ'S DECISION

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and has not engaged in substantial gainful activity since the alleged onset date of July 1, 2019. AR: 23. The ALJ then determined that Plaintiff suffers from severe impairments of vertigo, type 2 diabetes mellitus, Grave's disease, multiple sclerosis, migraines, and lumbar spine degenerative disk disease. AR: 24. The ALJ found that Plaintiff's medically determinable impairments of depression and anxiety were not severe, but only mildly limited her abilities to understand, remember, or apply information; concentrate, persist, or maintain pace;

and adapt or manage oneself. AR: 24-25. The ALJ then assessed Plaintiff's RFC, finding that she could perform light work, except

> [she] can never climb ladders, ropes or scaffolds, occasionally balance as defined in the Selected Characteristics of Occupations, occasionally climb ramps and stairs, stoop, crouch, kneel and crawl, frequently handle and finger with the bilateral upper extremities, have no exposure to extremes of cold and heat, cannot tolerate exposure to moving mechanical parts or unprotected heights, must have a bathroom on site and would miss no more than one day of work per month.

AR: 27.

The ALJ then found that Plaintiff can perform her past relevant work as a customer service representative (DOT # 241.367-014) and software specialist (DOT # 030.162-014). AR: 33. The ALJ made an alternative finding at step five that Plaintiff could perform other work in the national economy, including routing clerk, mail clerk, ticket taker, general clerk, and order caller. AR: 35. Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Act, from July 1, 2019, through the date of his decision. AR: 35.

## LEGAL STANDARDS

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

6

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v.*

*Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff ascribes error to the ALJ on two grounds. First, she says that the ALJ erred when he found that her mental health impairments were not severe at step two and also failed to explicitly address those impairments during his RFC determination. Brief at 12-17. Second, Plaintiff argues that the ALJ failed to properly consider the opinion of Physician Assistant Anastacia Wall. *Id.* at 17-20.

### A.      Plaintiff's mental impairments

Plaintiff alleges that the ALJ erred at step two when he found that Plaintiff's depression and anxiety were not severe impairments. She further argues for remand because the ALJ did not mention her mental impairments while calculating her RFC. The court will take each argument in turn.

#### 1.      *Step two*

At step two, an ALJ must determine whether a claimant's medically determinable impairments are severe. To be considered "severe," an impairment must meet *each* of the following three criteria. First, the impairment must be medically determinable, meaning that it is supported by objective medical evidence, not just a claimant's statement of her symptoms or a doctor's mere diagnosis or opinion. 20 C.F.R. § 404.1521. Second, the impairment must cause a

significant limitation in basic work-related activities. 20 C.F.R. § 404.1522. Finally, it must remain severe (or be expected to remain severe) for at least 12 continuous months. 20 C.F.R. § 404.1520(a)(4)(ii) (citing 20 C.F.R. § 404.1509 (the duration requirement)).

Here, the ALJ found that Plaintiff's depression and anxiety were medically determinable, thereby meeting the first criterion. AR: 24. However, the ALJ concluded that these impairments did not cause Plaintiff significant limitations in work-related activities, thus failing the second requirement. AR: 24-25. To determine whether a mental health impairment causes significant limitations in work-related activities, the ALJ must assess what are referred to as the "paragraph B criteria." *See* 20 C.F.R. § 404.1520a. This requires an ALJ to calculate a claimant's degree of functional limitation in "four broad functional areas" using a five-point scale.[5] 20 C.F.R. § 404.1520a(c)(4). Those four functional areas are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(1)-(4).

Here, the ALJ found that Plaintiff had only mild limitations in the first, third, and fourth functional areas and had no limitations when interacting with others. AR: 25. The ALJ supported his conclusion with exam findings showing Plaintiff to have normal memory, concentration, speech, insight, judgment, and other mental capabilities. AR: 24-25 (citing AR: 483, 490, 1001, 1022, 1100, 1116-17). The ALJ highlighted, too, the lack of evidence showing that Plaintiff required ongoing mental health treatment. AR: 25. Finally, the ALJ noted the findings from

---

[5] The five-point scale goes in increasing order of severity from none to mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Only "[t]he last point on the scale"—extreme—"represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.*

psychological consultants, who concluded that Plaintiff did not have more than mild limitations. *Id.*

The ALJ also addressed the opinion of Anastacia Wall, a physician's assistant, that Plaintiff could do only unskilled work because of her depression, namely due to deficits in concentration, memory, and energy. *Id.* The ALJ was not persuaded by this, emphasizing that these findings were not consistent with other exam results showing Plaintiff to have intact concentration and cognitive functioning. *Id.*

In short, the ALJ applied the correct legal standards, and substantial evidence supports his determination that Plaintiff's mental health impairments were not severe. Accordingly, Plaintiff's argument that the ALJ erred at step two is overruled.

### 2. RFC

Plaintiff argues that the ALJ completely failed to address her mental impairments when making his RFC determination. Respectfully, the record belies this contention.

The ALJ specifically stated that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." AR: 24. Moreover, in connection with the RFC analysis, the ALJ stated: "There is no documentation of depression that would interfere with production pace and no evidence of vision deficits." AR: 33. Consistent with the Tenth Circuit's directive, this court takes the ALJ at his word. *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter"); *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word.") (cleaned up) (citing *Flaherty v.*

10

*Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)). The ALJ's explicit mention of Plaintiff's depression, coupled with his affirmative representation that he considered all of her impairments, give this court no reason to doubt that the ALJ considered Plaintiff's mental health impairments in determining Plaintiff's RFC—even if he did not expound upon those particular impairments at length. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Regardless, the ALJ's analysis of Plaintiff's mental impairments at step two, *see* AR: 24-25, allows the court to follow the reasoning underlying the ALJ's determination of the RFC. As the Tenth Circuit has emphasized, an ALJ's previous discussion of an impairment is sufficient for this purpose, particularly where, as here, the ALJ states that he took into account "the entire record" and "all symptoms" in determining the claimant's RFC. *See* AR: 27; *see also, e.g.*, *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (where "the ALJ said he took into account "the entire record" and "all symptoms" in determining an RFC, "[i]t is clear this included Bradley's hand impairments because the ALJ discussed them in detail earlier in the decision"); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("[M]erely technical omissions in the ALJ's reasoning do not dictate reversal.").

In the end, the court must be able to (1) determine that the ALJ applied the correct legal standard, (2) follow the ALJ's reasoning, and (3) find that there is substantial evidence to support the conclusion reached by the ALJ. Here, the ALJ applied the correct legal standard. His analysis at step two allows the court to follow his reasoning and to understand the basis for his conclusion that Plaintiff's mental health impairments did not justify a lower RFC. And the ALJ's citations to

evidence in the record at step two satisfy the court that there is substantial evidence to sustain the ALJ's RFC determination. The court finds no reversible error.

### B. Physician Assistant Wall's medical opinions

Plaintiff maintains that the ALJ failed to adequately explain why Ms. Wall's opinions regarding Plaintiff's mental health were not persuasive. Brief at 17-20. With respect, that contention is demonstrably at odds with the record.

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed her applications in March 2020—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. 20 C.F.R. § 404.1520c.[6] Instead, under the applicable regulations, the ALJ will consider the persuasiveness of each medical source opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2); *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021).

---

[6] By contrast, "for claims filed *before* March 27, 2017, the Commissioner 'gives more weight to medical opinions from claimants' treating sources." *S.L. v. Comm'r*, No. 20-cv-01953-RMR, 2022 WL 897104, at *8 (D. Colo. Mar. 28, 2022) (cleaned up) (citing 20 C.F.R. § 404.1527(c)(2)).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Thus, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Miles*, 2021 WL 3076846, at *2 (quoting *Vellone v. Saul*, No. 20-cv-00261(RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)); *see also Lenoble v. Kijakazi*, No. 22-cv-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) ("supportability" is the extent to which the medical source supports his or her opinion with objective medical evidence and an explanation).

Consistency, on the other hand, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Consistency thus "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles*, 2021 WL 3076846, at *2-3 (citing 20 C.F.R. §§ 416.920c(c)(2), 404.1520c(c)(2)); *see also Lenoble*, 2022 WL 16855693, at *7 ("consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion).

The ALJ must explain his or her approach with respect to the supportability and consistency factors when considering a medical opinion: "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*. The ALJ is not required to expound on the remaining three factors unless two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Miles*, 2021 WL 3076846, at *3 (citing §§ 416.920c(b)(2)-(3), 404.1520c(b)(2)-(3)).

The court reviews the ALJ's evaluation of medical sources' opinions to ascertain whether the ALJ applied the correct legal standards and to determine whether "substantial evidence supports the ALJ's decision" to find those opinions persuasive or unpersuasive, as the case may be. *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 WL 1439112, at *5 (D. Colo. May 6, 2022) (reviewing ALJ decision that found some opinions of a medical source to be persuasive, and others unpersuasive); *see also L.A.M. v. Kijakazi*, No. 21-cv-00983-NYW, 2022 WL 3139031, at *11-12 (D. Colo. Aug. 4, 2022) (reviewing ALJ's findings that two medical sources' opinions were unpersuasive and finding no reversible error because the findings were "supported by substantial evidence"). Additionally, so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA*,

No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022)[7] (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Scrutinizing the record here pursuant to these standards, the court finds no error in the ALJ's finding that Ms. Wall's opinions were not persuasive.

First, the ALJ applied the correct legal standards. The ALJ stated that he considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. AR: 27. The ALJ then provided detailed specifics as to why he found Ms. Wall's February 4, 2022 opinions regarding Plaintiff's RFC unpersuasive.

As particularly pertinent to Plaintiff's argument for remand here, the ALJ specifically addressed Ms. Wall's opinions about Plaintiff's mental functioning. The ALJ noted that "Ms. Wall stated that she did not think the claimant was capable of fast paced production work due to 'problems with cognition and upper extremity incoordination' and 'pain, depression, vision issues, migraines and fatigue.'" AR: 33 (citing Ex. 15F, p. 4). However, the ALJ's analysis led him to conclude that "[t]his statement is entirely without foundation in any objective medical signs and findings in the record":

---

[7] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

> There is no documentation of depression that would interfere with production pace and no evidence of vision deficits. There is no evidence of treatment for migraine headaches other than medication, and headaches pain and fatigue are subjective symptom allegations by the claimant that are not supported by her activities, lack of medical treatment and good control of her MS, degenerative disk disease and hip pain on medication. Thus, this proposed limitation is unpersuasive.

*Id.*

The ALJ next addressed Ms. Wall's opinion—also related to Plaintiff's mental functioning—that Plaintiff "would be off task for 5-6 hours in an 8 hour day and could work no more than 15 minutes at a time due to migraines, lack of focus, memory deficits, pain, the need for breaks and the need for constant breaks due to urinary frequency." *Id.* (citing Ex. 15F, p. 5). This opinion was unpersuasive, the ALJ found, because "[t]hese symptoms and limitations have not been documented in the record and, as stated above, the claimant's primary treating physician, Dr. Corboy, who treats her for her multiple sclerosis, has given her no functional limitations of any kind." *Id.*

Finally, although perhaps not directly bearing on the issue of mental functioning, the ALJ evaluated Ms. Wall's assertion that Plaintiff did not have a normal neurological examination. *Id.* (noting a description by Wall that Plaintiff had "bilateral loss of dexterity in both hands, paresthesia[] and imbalance"). This opinion likewise was unpersuasive to the ALJ because it lacked evidentiary support in the record. As the ALJ observed, Plaintiff had but "one exam, by Dr. Carson, that showed some loss of fine motor function in fastening buttons, but no other findings showing loss of dexterity." *Id.* Further, there was no other evidence of paresthesia[8] in

---

[8] The court understands paresthesia to be "the technical term for the sensation of or the sensation of tingling, burning, pricking or prickling, skin-crawling, itching, 'pins and needles' or numbness

the record. *Id.* And while Plaintiff testified that she has imbalance and vertigo, the ALJ pointed to contradictory statements in the record indicating that Plaintiff does not use a cane or walker and can right herself when these symptoms occur. *Id.*

As this analysis demonstrates, the ALJ applied the legal standards dictated by the regulations that govern the assessment of medical source opinions. He specifically evaluated Ms. Wall's opinions to assess their correlation with objective, supporting medical evidence in the record, and found none; indeed, the ALJ found that the record support for Ms. Wall's opinions was non-existent. Thus, the ALJ explained the lack of supportability of the opinions and further highlighted their inconsistency with the record—including inconsistency with the opinion of Plaintiff's primary treating physician, who found that Plaintiff had no functional limitations. AR: 32-33 (discussing evidence in the record inconsistent with Wall's findings); *see also Miles*, 2021 WL 3076846, at *3. The ALJ's articulation of his evaluation of Ms. Wall's opinions allows the court to readily follow his reasoning and to determine that he applied the correct legal standards. *See P.T. v. Comm'r of Soc. Sec.*, No. 22-cv-02926-STV, 2023 WL 8108569, at *8 (D. Colo. Nov. 17, 2023) (confirming that the court was able to "follow the [ALJ's] reasoning in conducting [its] review [of the ALJ's analysis of a medical opinion], and can determine that correct legal standards have been applied") (quoting *Keyes-Zachary*, 695 F.3d at 1166).

Moreover, the ALJ's findings are supported by substantial evidence. The ALJ expressly and clearly set forth why he found Ms. Wall's opinions unsupported by, and inconsistent with, objective medical evidence in the record. He articulated why he found the opinions of other

---

on or just underneath your skin." *See* Paresthesia: What It Is, Causes, Symptoms & Treatment (clevelandclinic.org).

medical providers more persuasive. AR: 25, 32. He backed his conclusions with multiple citations to evidence in the record. AR: 27-33. This degree of evidence may readily be characterized as sufficient to allow "a reasonable mind" to accept it "as adequate to support [the ALJ's] conclusion[s]." *Biestek*, 587 U.S. at 103.

Because substantial evidence supports the ALJ's finding that Ms. Wall's opinions were not persuasive, the court finds no reversible error on this basis.

## CONCLUSION

For the reasons above, the court **AFFIRMS** the Commissioner's decision. Judgment shall enter accordingly.

DATED: September 27, 2024                BY THE COURT:

_____
Susan Prose
United States Magistrate Judge